IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT CINCINNATI

| | |
|---|---|
| **MOUNTAIN TOP BEVERAGE GROUP, INC.** | : |
| | : CASE NO. C-1-01-832 |
| Plaintiff, | |
| | : JUDGE SUSAN J. DLOTT |
| vs. | |
| | : |
| **WILDLIFE BREWING N.B., INC.** *et al.* | : |
| Defendants, | |
| vs. | : |
| **B.L.S. OF SARASOTA, INC.,** *et al.* | : |
| Third-Party Defendants. | : |

---

### DEFENDANT WILDLIFE BREWING N.B., INC.'S MEMORANDUM CONTRA PLAINTIFF'S AND THIRD-PARTY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

---

## I. INTRODUCTION

Plaintiff Mountain Top Beverage Group, Inc. ("Mountain Top") and Third-Party Defendants B.L.S. of Sarasota ("BLSS") and Brady Skinner ("Skinner") have not met their burden of showing there is no genuine issue of material fact because Defendant Wildlife Brewing N.B., Inc. ("Wildlife") has made claims under Lanham Act, including trademark dilution, of common law trademark infringement, Ohio trademark infringement, and has presented evidence to support these claims. This evidence is evidence on which the jury could reasonably find for Defendant Wildlife, so genuine issues of material fact exist and summary judgment is improper. As such, Plaintiff's and Third-Party Defendant's Motion should be denied.

## II. FACTS

This case involves the manufacture and sale of competing malt liquor products bearing the mark "WILDCAT." On July 19, 1993, BLSS filed an Intent to Use Trademark Application ("ITU

Application") with the United States Patent and Trademark Office ("USPTO") to register "X 40 WILDCAT" as a trademark on the USPTO's Principal Register for use on or in connection with beer and malt liquor. (Doc. #32, Exh. JJ.)

An ITU application permits a trademark applicant to begin the federal registration process without actually using the mark at the time of application. See 15 U.S.C. § 1051(b). The USPTO then issues a Notice of Allowance stating that a mark is in compliance with formalities and is registrable and it approves the application. Within six months an ITU applicant must file a Statement of Use ("SOU") with a specimen or facsimile of the mark as it is used in commerce in order to successfully register its trademark. The applicant may request and receive a number of extensions of time within which to file the SOU, so long as the SOU issues no later than thirty-six months after the Notice of Allowance. See 15 U.S.C. § 1051(d)(2). The SOU is a verified statement that the mark is in use in commerce, specifying the date on which the mark was first used in commerce, the goods in connection with which the mark was used, and the manner in which the mark is used in connection with the goods. See 15 U.S.C. § 1051(d)(1). Subject to examination of the SOU, the mark is then published for opposition, and absent opposition, registered on the Principal Register. *Id*.

On August 28, 2000, the last possible day on which BLSS could file its SOU without abandoning its trademark application, BLSS filed its SOU to register the WILDCAT mark, (doc. 34, exh. A at ¶ 16), and on November 13, 2001, "40 WILDCAT" was registered on the Principal Register of the USPTO. (*Id*., exh. B.) BLSS's SOU consisted of a photograph of a bottle with the mark affixed to it and the signed statement of Skinner, President of BLSS, that: "[a]pplicant is using the mark in commerce on or in connection with the following goods: malt liquor in class 32." The SOU further stated: "The mark was first used at least as early as August 22, 2000, and first used in commerce at least as early as August 22, 2000. Applicant is using the mark in interstate commerce." (Doc. #32, exh. UU.) The SOU provided no details as to how the mark was used, no information indicating whether there were any sales or interstate transportation of the goods, no details as to what quantity of the goods was produced, nor what revenue the goods had earned.

This Court found based upon the depositions of Plaintiff Mountain Top's personnel and through answers to interrogatories, that from the 1993 filing date of the ITU Application until the commencement of this action, neither Mountain Top nor its predecessor BLSS had made any sales of any products bearing the 40 WILDCAT mark, nor conducted any advertising or marketing of any products bearing the 40 WILDCAT mark. (Doc. #32, exh. CC at question #4, #13). This Court further found that there are no items bearing the 40 WILDCAT mark being marketed, sold, distributed or otherwise provided by Mountain Top. (*Id.*. at question #16).

Although Mountain Top, as required by statute, enclosed an image of a 40 WILDCAT product with its SOU, a true sample of packaging that could be used on a product eligible for sale was not available until at least August 30, 2000 because the labels required by ATF were not approved until then. (Doc. #32, Smith depo. at 70) (no distribution of beer and malt liquor products without ATF approval). Further, this Court found that Mountain Top had not yet contracted with a brewer to produce a Wildcat product at the time the SOU was filed, and the brewer with whom the Skinner companies were in contact ("Frederick Brewing") could not even quote a price until September of 2000, let alone have produced a shipment of the actual brew. (Doc. #32, exh. N)(production fees still in discussion by September 9, 2000).

There was no sale of goods bearing the 40 WILDCAT mark by any Skinner company until January 10, 2001, when Frederick Brewing Company sold a shipment to KABCo (Doc. #32, exh. T.) The Court found that this shipment was later destroyed by one of the Skinner companies because Mountain Top did not want to sell its 40 WILDCAT product while Wildlife's WILDCAT products were being sold in the market. (Doc. #32, Smith depo. at 73).

This Court further found that the 40 WILDCAT product shown in the SOU was a "dummy sample." Bert Smith, an operations employee of KABCo, testified in his deposition that a "dummy sample" of a 40 WILDCAT product was created and shown by local salespeople to retailers in the summer of 2000 although he could not be sure if the display actually occurred or by whom and to whom the sample might have been shown. (*Id.*. at 122-24.) Smith clarified that he did not in fact know

if a salesperson had ever shown the dummy sample. (*Id.*. at 123-24.) Smith also testified that there was no chance that the dummy sample contained the actual brew to be sold. (*Id.*. at 261-63.) He stated that there were no items bearing 40 WILDCAT marks marketed, sold, distributed, or otherwise provided by Mountain Top or BLSS. (Doc. #32, Smith depo. at 222-24).   Skinner, president of BLSS and majority shareholder of Mountain Top, testified that he personally never placed an order for any 40 WILDCAT product with David Snyder (the head of Frederick Brewing's parent company) (doc. #32, Skinner depo. at 65), and that Bert Smith would be the only other person authorized to do so. (*Id.*. at 67.)

In early 1999, while BLSS' ITU Application to register its 40 WILDCAT mark was pending, BLSS learned that Defendants Wildlife and Sorenson were using the name "WILDCAT" in connection with the manufacture and sale of either beer or malt liquor or both. (Doc. #34, exh. A ¶ 12.) Shortly thereafter, BLSS notified Defendants Wildlife and Sorenson of BLSS' ITU Application and informed Wildlife and Sorenson that their use of the name WILDCAT constituted infringement of BLSS' pending 40 WILDCAT trademark. (*Id.*. ¶ ¶ 13-14.) After a second letter from BLSS to Wildlife and Sorenson in February of 2001, Wildlife and Sorenson responded in March of 2001 with a letter to BLSS asserting that Sorenson was the owner of the common law trademark "WILDCAT" and any use of the mark 40 WILDCAT by BLSS would constitute infringement. (*Id.*, at letters following exh. A.)

On December 3, 2001, BLSS assigned its 40 WILDCAT mark to Mountain Top. (*Id.*, exh. D.) On December 5, 2001, Mountain Top commenced the instant action against Defendants Wildlife and Sorenson and against Defendant Pittsburgh Brewing Company ("PBC"), the company that manufactures Wildlife's WILDCAT products, alleging federal claims of trademark infringement and false designation of origin, and related state law claims of deceptive trade practices, tortious interference with economic relations and unfair competition, and asking the Court to cancel Wildlife's Ohio State Registration of the marks "WILD CAT ICE" and "WILD CAT MALT LIQUOR." Defendant Wildlife counterclaimed alleging federal claims of false designation of origin,  dilution of mark, and related state and common law claims of trademark infringement, unfair competition,

tarnishment, and injury to business reputation, unfair business practices, deceptive trade practices, and tortious interference with a contract and business relationship.

On November 21, 2003 this Court granted PBC's and Defendants Wildlife and Sorenson's Motion for Summary Judgment holding: "Plaintiff Mountain Top failed to use its Wildcat mark in commerce to support its federal registration. Plaintiff's federal registration of its Wildcat mark is therefore cancelled, and Defendant PBC's motion for summary judgment and the portion of Defendants Wildlife and Sorenson's motion for summary judgment on Plaintiff's claims are **GRANTED.**" November 21, 2003 Order, pages 16-17.

### III. LAW AND ARGUMENT

#### A. Standard for Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The party moving for summary judgment has the burden of showing that no genuine issue of material fact exists, and in considering the motion, the court must read the evidence (together with all inferences that permissibly can be drawn therefrom) in the light most favorable to the party opposing the motion. See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The movant may support the motion for summary judgment with affidavits or other proof or by exposing the lack of evidence on an issue for which the nonmoving party will bear the burden of proof at trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). On those issues for which it shoulders the burden of proof, the moving party must make a showing that is "sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." Calderone v. United States, 799 F.2d 254, 259 (6th Cir. 1986) (emphasis and citation omitted). For those issues on which the moving party will not have the burden of proof at trial, the movant must "point out to the district court . . . that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325.

The nonmoving party may not rest upon the pleadings when responding to a summary

judgment motion, but must go beyond the pleadings and "present affirmative evidence in order to defeat a properly supported motion for summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986). The nonmoving party "must set forth specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

Although "[t]he mere existence of a scintilla of evidence in support of Plaintiff's position will be insufficient" to overcome a summary judgment motion, Anderson, 477 U.S. at 252, a court should not grant summary judgment merely because the nonmovant's case appears weak. The task of the Court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.*. at 249. A genuine issue for trial exists when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id*. at 252. "In deciding upon a motion for summary judgment, we must view the factual evidence and draw all reasonable inferences in favor of the non-moving party." Nat'l Enters., Inc. v. Smith, 114 F.3d 561, 563 (6th Cir. 1997). "We examine the grant of summary judgment to determine `whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" C.T. Massey v. Exxon Corp., 942 F.2d 340, 342 (6th Cir. 1991) (quoting Booker v. Brown & Williamson Tobacco Co., 879 F.2d 1304, 1310 (6th Cir. 1989).

   **B. Wildlife Has Made Claims under the Lanham Act, Including Trademark Infringement and Dilution, Common Law Trademark Infringement, and Infringement of Wildlife's Registered Wildcat Marks with the State of Ohio Trademark**

"The Lanham Act [15 U.S.C. §§1051-1127] prohibits the unauthorized use of a registered trademark when selling or advertising a good or service using the trademark is likely to confuse or deceive consumers." U.S. Structures v. J.P. Structures, 130 F.3d 1185 (6th Cir. 1997). The Supreme Court of Ohio set forth the guidelines for the purpose and protection of a trademark in Younker v. Nationwide, 175 Ohio St. 1, 191 N.E. 2D 145 (1963). A trademark is a sign, word or device affixed to a product which identifies the goods of:

> a particular seller or manufacturer and distinguishes them from the goods sold or

6

> produced by another.
>
> ***
>
> [It] serves the basic purposes to identify a business and its products or services, to create a consumer demand therefor, and to protect any goodwill which one may create as to his goods or services.
>
> ***
>
> The fundamental purpose of the laws protecting interests in a trademark is twofold. First, it is to protect the public. Present day consumer purchasing is based frequently on name buying. Consequently, such name must be protected to assure the purchaser that he gets goods from the source on which he relies. Second, it is to protect the interest of the owner of the name or mark in the goodwill he has created, by keeping another merchandiser or producer from infringing on the goodwill created as to the name or mark. In part, the legal protection afforded is to prevent one from reaping where one has not sown.

Rights in a mark are acquired by the actual use of the names or marks, not merely by registration. Therefore, one who has adopted and uses a name or mark in connection with his business or products acquires the right to use that name or mark over one who subsequently registers the name or mark. See: Younker *supra.* at pages 6-7. See also: Homeowners Group, Inc. v. Home Marketing Specialist, Inc., 931 F.2d 1100, 1105 (6th Cir. 1991).

It is undisputed that Wildlife has been using its WILDCAT mark in commerce from as early as 1999. Mountain Top attempts to argue in its Motion that the Court has found that Mountain Top and its predecessor have not used the 40 WILDCAT mark in commerce, while still claiming that Mountain Top did use the 40 WILDCAT mark in commerce. See footnote 1, page 6 of Plaintiff and Third-Party Defendants' Motion for Summary Judgment.

This Court has found that Mountain Top failed to use its 40 WILDCAT mark in commerce to support its federal registration. The evidence presented to date establishes that Mountain Top has not used the 40 WILDCAT mark in commerce through at least November, 2003. Mountain Top, however, is continuing to claim that it did use the 40 WILDCAT mark, apparently after the false SOU was filed on behalf of BLSS, sworn to and signed by Skinner. BLSS did not use the 40 WILDCAT mark as required by statute within the time prescribed, and therefore, abandoned its ITU Application. The Court correctly found as a matter of law that the 40 WILDCAT Registration must therefore be cancelled. As such, any use of the 40 WILDCAT mark by Mountain Top would constitute a violation

of the Lanham Act, including trademark infringement, dilution of the mark, common law trademark infringement, and infringement of Wildlife's Registered WILDCAT marks with the State of Ohio, a s to Wildlife's WILDCAT mark.  Therefore, summary judgment on this issue is inappropriate.  Mountain Top creates a genuine issue of material fact by alleging that it has used the 40 WILDCAT mark in commerce.

### C. Wildlife Has Made a Claim for Dilution of Mark, Tarnishment and Injury to Business Reputation

It is undisputed that Wildlife has used and maintains an interest in the distinctive quality of WILDCAT ICE, WILDCAT MALT LIQUOR and WILDCAT marks, names and designs. Mountain Top, BLSS, and Skinner's use or advertisement the 40 WILDCAT mark on any product has and will continue to injure the business reputation of Wildlife N.B. and cause a dilution of the distinctive quality of Wildlife's WILDCAT ICE, WILDCAT MALT LIQUOR and WILDCAT marks, and its other marks, names and designs in violation of Ohio common law.    Mountain Top again tries to argue that it has used its 40 WILDCAT mark in commerce and therefore it owns the mark or in the alternative that Mountain Top never used its 40 WILDCAT mark.  Under either argument, Mountain Top claims that it is entitled to summary judgment on Wildlife's claim for dilution of mark.

This Court has found as a matter of law that the 40 WILDCAT mark was not used within the time provided by statute to be registered on the principal register and has ordered the 40 WILDCAT Registration be canceled.  Mountain Top is not entitled to summary judgment on the basis that it is the lawful owner of the 40 WILDCAT mark.  This Court has already determined that issue.

Mountain Top creates a genuine issue of material fact by arguing that it has used the 40 WILDCAT mark in commerce.  Therefore, summary judgment is inappropriate.

### D. Wildlife has made Claims for Relief Under Ohio Law Against Mountain Top, Skinner and BLSS

Mountain Top, BLSS, and Skinner's use of the WILDCAT mark violates the Ohio Unfair Business Practices Act ("OUBPA"), Ohio Revised Code §§1345.01 *et seq*. ORC §1345.02(A) provides:

> No supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction. Such an unfair or deceptive act or practice by a supplier violates this section whether it occurs before, during, or after the transaction.

Mountain Top is a supplier as defined in ORC § 1345.01(C). Any attempt by Mountain Top to sell products bearing the 40 WILDCAT mark to consumers, whether directly or indirectly, would be unfair and deceptive as consumers could believe that such products were the products of Wildlife. Intent to deceive is not a requirement of the OUBPA. See Rose v. Zaring Homes, Inc., 122 Ohio App.3d 739, 702 N.E.2d 952 (Hamilton Cty. Court of Appeals 1997). As Mountain Top is arguing that it is using its 40 WILDCAT mark in commerce, summary judgment on this issue is not appropriate.

Mountain Top, BLSS and Skinner's use of the WILDCAT mark is also violative of the Ohio Deceptive Trade Practices Act ("ODTPA"). ORC § 4165.02 provides in pertinent part:

> (A) A person engages in a deceptive trade practice when, in the course of the person's business, vocation, or occupation, the person does any of the following:
>   (1) Passes off goods or services as those of another;
>   (2) Causes likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services.

Courts have found the analysis of such claims is similar to claims under the Lanham Act:

> Generally, the Ohio Deceptive Trade Practices Act is a codification of the common law. Worthington Foods, Inc. v. Kellogg Co. (S.D.Ohio 1990), 732 F. Supp. 1417, 1431. Further, it is substantially similar to Section 43(a) of the Lanham Act, Section 1125(a), Title 15, U.S.Code. *Id.* Accordingly, cases interpreting the Lanham Act or the common law of trademarks are relevant to analysis of claimed violations of R.C. Chapter 4165.

Yocono's Restaurant, Inc. v. Yocono, 100 Ohio App.3d 11,17, 651 N.E.2d 1347 (Summit Cty. Court of Appeals 1994). If Mountain Top has used or is using the 40 WILDCAT mark in commerce as it is claiming, such use of that mark would be violative of the ODTPA. Mountain Top creates a genuine issue of material fact by arguing that it has the 40 WILDCAT mark in commerce. Therefore, summary judgment on this issue is inappropriate.

Unfair competition has occurred if confusion exists as to the source or origin of the goods. Cesare v. Work, 36 Ohio App.3d 26, 520 N.E.2d 586 (1987) [citing *West Point Mfg. Co. v. Detroit Stamping Co.,* 222 F.2d 581, 589 (C.A. 6, 1955)]. If Mountain Top is using the 40

9

WILDCAT mark in commerce, it would constitute unfair competition under Ohio law. Mountain Top creates a genuine issue of material fact by arguing that it has the 40 WILDCAT mark in commerce. Therefore, summary judgment on this issue is inappropriate.

**IV. CONCLUSION**

Because Defendants have presented evidence on which a jury could find in their favor on multiple claims, this Court should deny Plaintiff and Third-Party Defendants' Motion for Summary Judgment and because Mountain Top has asserted a genuine issue of material fact by arguing that it has used the 40 WILDCAT mark in commerce.

        Respectfully submitted,

        CHAPPANO WOOD PLL
        8 E. Long Street, 9th Floor
        Columbus, OH 43215-2947
        Telephone (614) 228-4422
        Facsimile (614) 228-4423
        Email: dlp@cwpll.com

        /s/ David L. Petitjean, Of Counsel
        David L. Petitjean, Of Counsel (OH0039595)
        Trial Counsel for Defendants James Sorenson
        Wildlife Brewing N.B., Inc.

Of Counsel:

Perry M. Chappano (OH 0037418)
CHAPPANO WOOD PLL
8 E. Long Street, 9th Floor
Columbus, OH 43215-2947
Telephone (614) 228-4422
Facsimile: (614) 228-4423
Email: pmc@cwpll.com

**CERTIFICATE OF SERVICE**

The undersigned certifies that a copy of Defendant Wildlife Brewing N.B., Inc.'s Memorandum Contra Plaintiff and Third-Party Defendants' Motion for Summary Judgment has been sent by ordinary U.S. Mail to: Thomas P. Whelley, II, Trial Counsel for Plaintiff, CHERNESKY, HEYMAN & KRESS P.L.L.10 Courthouse Plaza SW Suite 1100, Dayton, OH 45402, Facsimile and Robert A. Klingler, 525 Vine Street Suite 2320, Cincinnati, OH 45202, Counsel for Defendant Pittsburgh Brewing Company, this <u>1st</u> day of June, 2004.

/s/ David L. Petitjean, Of Counsel<br>David L. Petitjean, Of Counsel